PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEANETTE DAVIS,
Plaintiff-Appellant,

v.

BELL ATLANTIC-WEST VIRGINIA,

INCORPORATED, d/b/a The
Chesapeake and Potomac Telephone
Company of West Virginia, a West
Virginia Corporation,
Defendant-Appellee.

No. 96-1065

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Robert J. Staker, Senior District Judge.
(CA-95-445-6)

Argued: December 2, 1996

Decided: April 3, 1997

Before HALL, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hall and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** William C. Garrett, Gassaway, West Virginia, for Appel-
lant. Donald Bell Haller, Arlington, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

The question we decide in this case is whether an employee's state law claims for violation of a settlement agreement that resolved a grievance brought under her collective-bargaining agreement are pre-empted by § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. We hold that they are and accordingly affirm.

I

In August 1991, Bell Atlantic-West Virginia, Incorporated ("Bell Atlantic") discharged Jeanette Davis from her position as a telephone operator for excessive absenteeism and tardiness. Davis was a member of the bargaining unit represented by the Communication Workers of America, AFL-CIO ("the Union"), and was, therefore, covered by the Union's collective-bargaining agreement which provided her with specific grievance rights. Pursuant to the collective-bargaining agreement, she filed a grievance through the Union, challenging her discharge. The parties reached a settlement agreement providing for Davis' reinstatement without backpay or damages. Davis, Bell Atlantic, and the Union signed the agreement. The settlement agreement provided further that Bell Atlantic would "immediately bridge the net credited service" which Davis had accrued prior to her termination (12 years) but that Davis would not receive any service credit for the period between her discharge and her reemployment. The agreement also provided that if Davis "exceeds six incidental absences or six tardies in the twelve (12) months following her reemployment, she shall be subject to immediate dismissal by the Company, without recourse to the grievance or arbitration procedure."

Within ten months after resuming her employment, Davis was tardy seven times, several without explanation and several because she overslept. On May 31, 1994, Bell Atlantic discharged her again.

Davis filed a two-count complaint against Bell Atlantic in the Circuit Court of Wood County, West Virginia, alleging a state law contract claim for breach of the collective-bargaining agreement and the

2

settlement agreement and a state law tort claim for wrongful discharge. In her breach of contract count, Davis alleged that she "was wrongfully discharged in violation of [Bell Atlantic's] policy on tardiness, of the terms and conditions of [the Union's] collective-bargaining agreement, of which she was a member, and the settlement agreement, dated July 30, 1993." Incorporating the same allegations in her wrongful discharge count, Davis alleged in that count that Bell Atlantic violated implied duties of "good faith" and "fair dealing" and a duty to discharge her only for "just cause."

Bell Atlantic removed Davis' complaint to the federal court under 28 U.S.C. § 1441, alleging that Davis' claim was preempted by § 301 of the LMRA and therefore her claims fell within the district court's federal question jurisdiction. The district court denied Davis' motion to remand, finding that the LMRA preempted the state law claims. The court concluded that Davis' breach of contract claim was clearly preempted because it explicitly alleged a breach of the collective-bargaining agreement and of the derivative settlement agreement. The district court also found Davis' wrongful discharge claim preempted because Davis' allegation that Bell Atlantic violated implied conditions of "good faith," "fair dealing" and discharge only for "just cause" could be interpreted solely in the context of the rights and responsibilities defined in the collective-bargaining agreement. The district court later granted Bell Atlantic's motion for summary judgment because Davis' complaint was barred by the applicable statute of limitations. This appeal followed.

II

The single issue that Davis raises on appeal is whether the district court properly refused to remand her complaint to the state court on the ground that federal labor law preempts her state claims. While Davis acknowledges that a claim for breach of a collective-bargaining agreement is exclusively a question of federal law under § 301 of the LMRA, she argues that her claim for breach of the settlement agreement is an independent state law claim because "the terms of the [settlement agreement] did not rely upon the interpretation of any term or provision of the collective-bargaining agreement." In an effort to separate her claim from the collective-bargaining agreement, Davis notes that in the settlement agreement she agreed to dismiss the griev-

3

ance filed under the collective-bargaining agreement and to waive any "grievance rights" if she violated the settlement agreement.

The particular question that Davis' appeal raises-- whether claims for breach of a settlement agreement entered into pursuant to the grievance procedure of a collective-bargaining agreement are preempted by § 301 of the LMRA -- has not previously been addressed by our court.

The applicable legal principles are not disputed. Section 301 of the LMRA provides that suits for violation of collective-bargaining agreements may be filed in federal court. See 29 U.S.C. § 185(a). And it is well established that § 301 provides federal courts not only with jurisdiction but also with the duty of developing a federal common law of labor rights. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957). To ensure uniform interpretation of collective-bargaining agreements and to protect the power of arbitrators,§ 301 has been found to "displace entirely any state cause of action `for violation of contracts between an employer and a labor organization.'" Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983). Accordingly, "state law does not exist as an independent source of private rights to enforce collective-bargaining contracts." Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (citation omitted). Moreover, the Supreme Court has refused to allow artful pleading to circumvent the power of § 301's preemptive force. Form is not to triumph over substance as employees relabel contract claims as claims for tortious breach of a contract. See Allis-Chalmers, 471 U.S. at 211. Under this "complete pre-emption corollary to the well-pleaded complaint rule," Caterpillar, 482 U.S. at 393, it follows that a purportedly state law claim, the resolution of which depends substantially upon the analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law. See Allis-Chalmers, 471 U.S. at 220.

While § 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law," Livadas v. Bradshaw, 512 U.S. 107, 123 (1994), § 301 preemption does occur when resolution of a state claim "is inextricably intertwined with consideration of

4

the terms of the labor contract," Allis-Chalmers, 471 U.S. at 213, or, as the Court expressed in an alternative formulation, when application of state law to a dispute "requires the interpretation of a collective-bargaining agreement," Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988). Accordingly, "it is the legal character of a claim, as `independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from`precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." Livadas, 512 U.S. at 123-24 (internal citation omitted).

We had occasion to define yet further the circumstances when § 301 preempts a state law claim in McCormick v. AT&T Technologies, Inc., 934 F.2d 531 (4th Cir. 1991). In McCormick, we held that determination of an employer's right to empty an employee's locker required interpretation of the relevant collective-bargaining agreement and, therefore, that § 301 preempted the employee's state law tort claim based on the locker incident. In doing so, we held that "[s]tate tort claims are preempted where reference to a collective bargaining agreement is necessary to determine whether a `duty of care' exists or to define `the nature and scope of that duty . . . .'" Id. at 536 (quoting IBEW v. Hechler, 481 U.S. 851, 862 (1987)). We noted that, although the collective-bargaining agreement at issue did not delineate the employer's rights with respect to employee lockers, the preemptive force of § 301 was sufficient to support a broad construction of the meaning of a collective-bargaining agreement to be "a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate." McCormick, 934 F.2d at 536 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960)).

With these principles in hand, we now turn to the case before us.

III

The first count of Davis' complaint alleges a breach of both the collective-bargaining agreement and the agreement settling a grievance filed under the collective-bargaining agreement. To the extent that this breach of contract claim rests on the collective-bargaining agreement itself, § 301 of the LMRA clearly preempts the claim. See

5

Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95, 102 (1962). For the reasons that follow, we also believe that her claim for breach of the settlement agreement depends on rights conferred by the collective-bargaining agreement and is therefore preempted.

The collective-bargaining agreement established, among other things, Davis' conditions of employment with Bell Atlantic and directly controlled Bell Atlantic's original dismissal of Davis for absenteeism and tardiness. The collective-bargaining agreement provided that Bell Atlantic "will not discuss or attempt to settle" such a matter without Union participation and requires that any settlement be reached within the collective-bargaining agreement's grievance procedure. Accordingly, when Davis was first discharged, she filed a grievance under the collective-bargaining agreement with the assistance of the Union. And in accordance with the procedure specified in the collective-bargaining agreement, Davis, the Union, and Bell Atlantic reached a settlement, which all three parties signed. That agreement's entire vitality and legitimacy thus draws on the underlying collective-bargaining agreement. While the parties to the settlement agreement did waive further grievance procedures, in the settlement agreement they nevertheless defined the "just cause" necessary for subsequent termination, a restriction on Bell Atlantic's right to dismiss employees which was established in the collective-bargaining agreement.

Moreover, interpretation of the settlement agreement would require reference to an interpretation of the collective-bargaining agreement. The settlement agreement provided that Bell Atlantic would "bridge the net credited service which [Davis] had accrued prior to termination"; it provided that Davis would maintain "fully satisfactory dependability as a condition of employment"; and it provided that Davis was subject to discharge if, during the ensuing 12 months, she exceeded "six incidental absences or six tardies." All of these terms relate to the underlying work relationship between Davis and Bell Atlantic and require reference to the collective-bargaining agreement for interpretation and application. Defining credited service, satisfactory dependability, and incidental absenteeism or tardies does not draw on independently established conditions of employment.

While an independent employment contract's mere borrowing of one or more terms from a collective-bargaining agreement does not

6

in itself bring that contract within the scope of § 301 preemption, <u>see</u> <u>Marion v. Virginia Elec. & Power Co.</u>, 52 F.3d 86, 89 (4th Cir. 1995), the settlement agreement here was not an independent employment contract simply borrowing terms from the collective-bargaining agreement. The Union's collective-bargaining agreement remained in force to govern Davis' employment relationship except insofar as it was modified by the settlement agreement. Thus, if during her period of reemployment, Bell Atlantic imposed a condition of employment on Davis that conflicted with the collective-bargaining agreement, the issue could have been pursued through the collective-bargaining agreements' grievance procedure. The settlement agreement in this case addressed discipline only for absenteeism and tardiness and thus may fairly be characterized as a rider to the collective-bargaining agreement. <u>Cf</u>. <u>Thomas v. LTV Corp.</u>, 39 F.3d 611, 618 (5th Cir. 1994) (considering an attendance probation agreement itself to qualify technically as a collective-bargaining agreement); <u>Stallcop v. Kaiser Found. Hosps.</u>, 820 F.2d 1044, 1048 (9th Cir. 1987) (finding an oral agreement made in connection with reinstatement to be part of a collective-bargaining agreement).

Accordingly, the preservation of a uniform federal law of labor relations under § 301 of the LMRA requires that we recognize the settlement agreement in this case as merely a particular expression of rights and duties created by a collective-bargaining agreement. For that reason, § 301 preempts an alleged breach of the Union-negotiated agreement that settled an employee grievance. <u>See Thomas</u>, 39 F.3d at 616-18 (holding that § 301 preempts a state wrongful discharge claim based on violation of an attendance probation agreement between a union and an employer); <u>Jones v. General Motors Corp.</u>, 939 F.2d 380, 382-83 (6th Cir. 1991) (concluding that § 301 preempts state law claims for breach of a settlement agreement because "it will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA"); <u>Stallcop</u>, 820 F.2d at 1048-49 (finding that § 301 preempts state tort claims for breach of a union-negotiated agreement to reinstate an employee).

Davis' second state law count alleging a West Virginia tort of wrongful discharge is for similar reasons preempted. Davis alleged that Bell Atlantic breached implied terms of her employment relation-

ship that mandate "good faith," "fair dealing," and "just cause for termination." Under West Virginia law, a discharged employee claiming the tort of wrongful discharge for breach of an employment contract must prove, among other things, the existence of the employment contract and the breach of its terms. See Collins v. Elkay Mining Co., 371 S.E.2d 46, 52 (W.Va. 1988); Cook v. Heck's, Inc., 342 S.E.2d 453, 459 (W.Va. 1986). By definition, therefore, the tort of wrongful discharge has its roots in the contractual arrangement establishing the employment relationship. Because the basis of Davis' state tort claim thus depends on an interpretation of the underlying collective-bargaining agreement, the tort claim alleged in this case is also a matter of federal law and is preempted. See Allis-Chalmers, 471 U.S. at 216-19 ("Because the [state tort claim] not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation.").

IV

Davis concedes that once we have found that § 301 of the LMRA preempts her state law claims, the district court properly entered summary judgment against her for failure to satisfy the applicable statute of limitations. Accordingly, we affirm.

AFFIRMED

8