**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CUMBERLAND TIMES-NEWS
DIVISION OF THOMSON NEWSPAPERS,
INCORPORATED,
Plaintiff-Appellant,

No. 97-1517

v.

TEAMSTERS LOCAL UNION NO. 453,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-96-2428)

Argued: December 1, 1997

Decided: January 13, 1998

Before ERVIN and HAMILTON, Circuit Judges, and
WILSON, Chief United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Anthony Prozzi, JACKSON, LEWIS, SCHNITZ-
LER & KRUPMAN, Pittsburgh, Pennsylvania, for Appellant. Hugh
J. Beins, Sr., BEINS, BODLEY, AXELROD & KRAFT, P.C., Wash-

ington, D.C., for Appellee. **ON BRIEF:** Jonathan G. Axelrod, BEINS, BODLEY, AXELROD & KRAFT, P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cumberland Times-News Division of Thomson Newspapers, Inc. (the Company) appeals the district court's grant of summary judgment in favor of Teamsters Local Union No. 453 (the Union). The district court enforced an arbitration award in favor of the Union, in particular Union member Rodger Lancaster, concluding that the arbitrator's award drew its essence from the December 1994 Collective Bargaining Agreement (the CBA) between the Company and the Union.[1] For reasons that follow, we affirm.

I

Rodger Lancaster began part-time employment with the Company in 1974, which turned into full-time employment in 1981. In September 1987, he was laid off from his full-time position as a newspaper delivery person. Lancaster filed a grievance contending that the Company had violated the CBA by using independent contractors to perform bargaining unit work.

_____

[1] Over the years, the Company and the Union have entered into successive CBAs, the most recent being the December 31, 1994 CBA which expired on December 31, 1997. The parties agree that the provisions of the CBAs in effect prior to the December 1994 CBA are the same in all material respects as the CBA entered into in December 1994. For purposes of clarity, all references to the CBA are references to the December 1994 CBA.

2

On August 27, 1988, Lancaster, who had evidently been working part-time to deliver Sunday newspapers for the Company, was laid off from his part-time position. He filed another grievance contending again that bargaining unit work was being improperly assigned to independent contractors.

Pursuant to the CBA, Lancaster's grievances proceeded to arbitration. After a hearing, Arbitrator Thomas E. Bracken concluded that the Company did not violate the CBA when it laid off Lancaster from his full-time position in September 1987 because the layoff was reasonable and in good faith. However, Arbitrator Bracken concluded that the Company did not act reasonably and in good faith when it laid off Lancaster from his part-time position in August 1988. Accordingly, Arbitrator Bracken ordered that Lancaster receive back pay and reinstatement.

After Arbitrator Bracken's decision, the Company and the Union entered into a settlement agreement, dated June 14, 1990 (the June 1990 Settlement Agreement). In exchange for Lancaster's part-time position and seniority rights, the Company gave Lancaster $2,000 and agreed "that in the event a vacancy occur[red] in the Teamsters' bargaining unit one offer of employment [would] be made to Mr. Lancaster prior to the hiring of any person not then employed by the Times-News." (J.A. 30).

In July 1995, two Union drivers retired. Following the retirement of these drivers, the Company rearranged some of the delivery routes and engaged additional independent contractors. Following the Company's refusal to rehire Lancaster, the Union filed the grievance at issue in this case. A hearing was held on April 2, 1996 before Arbitrator Robert E. Nagle, who issued a decision on July 6, 1996. Arbitrator Nagle concluded that the obligation to offer employment to Lancaster created by the June 1990 Settlement Agreement was triggered when the Company engaged independent contractors following the retirement of two Union employees. As an award, Arbitrator Nagle ordered that Lancaster be reinstated and given back pay. To prevent the offer of reinstatement from being defeated by future subcontracting, Arbitrator Nagle also ordered that Lancaster could not "be laid off as a result of the subcontracting of bargaining unit work." (J.A. 50).

3

The Company then brought this action in the United States District Court for the District of Maryland seeking to vacate the labor arbitration award pursuant to § 301 of the Labor-Management Relations Act of 1947. See 29 U.S.C. § 185 et seq. The Union cross-claimed to enforce the arbitration award, and for prejudgment interest and attorney's fees.

The case was resolved by the district court on cross-motions for summary judgment. On March 26, 1997, the district court granted the Union's motion for summary judgment and denied the Company's motion for summary judgment. The district court enforced Arbitrator Nagle's award and awarded prejudgment interest, but it denied the request for attorney's fees. On April 17, 1997, the Company filed a timely notice of appeal.

II

An arbitration award may not be overturned unless the award "violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer Gas Co. v. Oil Chem. & Atomic Workers, 76 F.3d 606, 608 (4th Cir.), cert. denied, 117 S. Ct. 80 (1996). Our review is limited to determining "whether the arbitrator did his job--not whether he did it well, correctly, or reasonably, but simply whether he did it." Id. In making this assessment, we examine: "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." Id.

The Company contends that Arbitrator Nagle exceeded his authority when he ordered that Lancaster could not "be laid off as a result of the subcontracting of bargaining unit work." (J.A. 50).[2] In support of its position, the Company cites two provisions of the CBA. The first is Article XX which provides that certain employees other than Lancaster "shall remain as employees for the remainder of their working lives unless vacating [their employment] through retirement, res-

_____

[2] The Company concedes that Arbitrator Nagle had the authority to order reinstatement and back pay.

4

ignation, permanent disability, death or discharge for cause." (J.A. 28). The second is Article V, § 3 which provides:

> The arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under this Agreement. The arbitrator shall determine any questions of arbitrability. In the event the position of the Union is sustained, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him had there been no grievance.

(J.A. 16).

With respect to Article XX of the CBA, the Company argues that the remedial guarantee against future subcontracting given to Lancaster is the same afforded to the employees covered by Article XX of the CBA and, therefore, Arbitrator Nagle created a new term and condition of employment for Lancaster in violation of the CBA. This argument has no merit. Arbitrator Nagle's award does not put Lancaster on par with the employees covered by Article XX of the CBA, as Lancaster does not have a position guaranteed for life. Clearly, Lancaster could be laid off if the Company consolidated his delivery route with routes handled by existing employees.

The Company's stronger position lies in Article V, § 3 of the CBA which states that if "the position of the Union is sustained, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him had there been no grievance." Id. According to the Company, the guarantee which was set forth in Arbitrator Nagle's decision gave Lancaster a greater benefit, namely, unlimited insulation against the effects of subcontracting. At first blush, this argument carries force in that, arguably, the CBA intimates that the arbitrator can only grant relief that the employee would have been entitled to had there been no grievance. However, the Company's argument founders when this provision of the CBA is considered in conjunction with the June 1990 Settlement Agreement, which is properly construed as a rider to the CBA, and may in fact modify it. See, e.g., Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245, 249 (4th Cir. 1997) (recognizing that settlement agreements entered into

5

following a grievance procedure initiated pursuant to the CBA may modify the CBA and are fairly characterized as riders to the CBA).**3**

Following Arbitrator Bracken's decision ordering Lancaster to be reinstated, the June 1990 Settlement Agreement was procured through a deliberative process. In exchange for Lancaster's job and seniority rights, the Company gave Lancaster $2,000 and agreed, in the event a vacancy arose in the bargaining unit, to offer Lancaster a position prior to the hiring of any person not employed by the Company. Once a vacancy arose in the bargaining unit and the position was being performed by an independent contractor, the duty to hire Lancaster was triggered and the terms of the June 1990 Settlement Agreement breached.

The question then is simply the appropriate remedy. In this case, Arbitrator Nagle selected a remedy to prevent the Company from reneging on its promise to rehire Lancaster and to prevent the very harm that caused Lancaster to grieve in the first place. In essence, Arbitrator Nagle was protecting Lancaster from being hired on day one and then, on day two, being laid off as a result of subcontracting. In our view, this prospective remedy was authorized by the June 1990 Settlement Agreement, which itself contained a prospective agreement, and the CBA. Because Arbitrator Nagle's decision drew its essence from the CBA, the district court correctly granted summary judgment to the Union.**4**

III

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED
_____

**3** Notably, Article V, § 4 of the CBA provides that a "mutual settlement of the grievance pursuant to the procedure set forth herein will be final and binding on all parties and the employees involved." (J.A. 16).

**4** For the reasons stated by the district court, we affirm the award of prejudgment interest and the denial of attorney's fees. We also note that the Company conceded at oral argument that if we held in favor of the Union, Lancaster's right and protection against future subcontracting survives the expiration of the December 1994 CBA and any subsequent CBAs unless the parties specifically contract away Lancaster's rights.

6