Sarah **HARLESS**, personal representative of Edward Lewis and Administratrix of his Estate, Plaintiff,

v.

**CSX HOTELS, INC.,** d/b/a The Greenbrier Resort, a West Virginia Corporation, Defendant.

No. CIV.A. 5:03–0132.

United States District Court, S.D. West Virginia, Beckley Division.

June 3, 2003.

Mark W. Burnette, Burnette & Burnette, Lewisburg, WV, for plaintiff.

John R. Hunt, Arch Y. Stokes, Stokes & Murphy, Atlanta, GA, Susan M. Kleisner, White Sulphur Springs, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Currently pending before the Court are motions by Plaintiff Sarah Harless to Amend the Complaint and Remand this action to the Circuit Court of Greenbrier County, West Virginia, and Defendant's motion for summary judgment. For the reasons stated below, the Court **GRANTS,** in part, **DENIES,** in part, and **HOLDS IN ABEYANCE, in part,** the motion to amend; **DENIES** Plaintiff's motion to remand; and **DENIES, without prejudice,** Defendant's motion for summary judgment.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On January 16, 2003, Plaintiff, as the personal representative for and the Administratrix of the estate of her father, Edward Lewis, filed a Complaint in the Circuit Court of Greenbrier County alleging eight causes of action against Defendant CSX Hotels, Inc., d/b/a The Greenbrier Resort, a West Virginia Corporation. In her Complaint, Plaintiff asserts that Mr. Lewis was an employee of Defendant from on or about May 3, 2000, until on or about January 24, 2001. On December 27, 2000, Mr. Lewis was moving a heavy ice sculpture during the course of his employment when he felt numbness in his face. The next day, Mr. Lewis allegedly told his supervisor of the problem, and his supervisor referred him to the Greenbrier Clinic (hereinafter the Clinic).[1]

According to the Complaint, Mr. Lewis was examined by Dr. Ernest Baldwin at the Clinic on December 28, 2000. At that time, Mr. Lewis was told he should not return to work, and Dr. Baldwin and his staff assisted Mr. Lewis in filling out his paperwork to file for Worker's Compensation.[2] The next day, Mr. Lewis returned to the Clinic and was examined by Dr. Robert Thompson. Dr. Thompson in-

---

1. Although independent from Defendant, Plaintiff asserts the Clinic has a close business relationship with Defendant, and it provides care for Defendant's guests and employees.

2. Plaintiff states that Mr. Lewis completed his Workers' Compensation paperwork on January 24, 2001.

structed Mr. Lewis to see his family physician before returning to work.

On January 3, 2001, Mr. Lewis saw his family physician who ordered a stress test. A stress test was performed and indicated possible coronary artery disease. As a result, Mr. Lewis underwent a catheterization on January 12, 2001, and angioplasty, with a stent implanted, on January 22, 2001. Mr. Lewis was discharged from the hospital on January 24, 2001, and was given several prescriptions for medications. Plaintiff asserts that Defendant knew about Mr. Lewis' medical condition and that his physicians, including those at the Clinic, had ordered him not to return to work as of the date of his angioplasty.

Upon arriving home from the hospital, Mr. Lewis received a certified letter from Defendant terminating his employment due to absenteeism. Plaintiff states that, upon receiving this letter, Mr. Lewis became depressed and did not get his prescriptions filled because he was unable to pay for his care with the loss of his health insurance due to his termination. Plaintiff asserts that on January 31, 2001, Mr. Lewis died from an acute myocardial infraction because of his failure to take the medicine prescribed to him.

Plaintiff alleges that, during the relevant time period, Mr. Lewis was a member of the Hotel and Restaurant Employees Local Union # 863, which had a collective bargaining agreement with Defendant. Included within that agreement are several provisions which outline absenteeism. In the factual background portion of her Complaint, Plaintiff alleges that Defendant violated these provisions when it terminated Mr. Lewis' employment. Plaintiff also alleges that several of those provisions are vague.

Plaintiff further makes direct references to violations of the collective bargaining agreement in three different counts in the Complaint. First, Plaintiff asserts in Count II that Defendant breached its contract with Mr. Lewis by violating the terms of the agreement. Next, in Count IV, Plaintiff claims that Defendant committed fraud by misrepresenting or misapplying the terms of the collective bargaining agreement in terminating Mr. Lewis' employment. Plaintiff asserts these actions were a mere ruse to avoid the costs associated with Mr. Lewis' illness. Finally, in Count VIII, Plaintiff alleges that Defendant breached its duty of good faith and fair dealing, which included a duty to abide by the terms of the collective bargaining agreement. In the other five counts, Plaintiff alleges wrongful discharge (Count I), wrongful death (Count III), constructive fraud (Count V), outrageous and unconscionable conduct (Count VI), and intentional infliction of emotional distress (Count VII).

Based upon Plaintiff's allegations that Defendant violated the provisions of the collective bargaining agreement, Defendant timely filed a notice of removal pursuant to 28 U.S.C. § 1441(c), based upon federal question and preemption under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff now seeks to amend her Complaint to remove all references to the collective bargaining agreement and then have the case remanded back to the Circuit Court of Greenbrier County. Defendant opposes both the amendment and the remand.

## II.

## DISCUSSION

Although Rule 15 of the Federal Rules of Civil Procedure states that courts should freely grant motions to amend pleadings, federal courts have recognized an exception for removed cases in which

amendment would have the effect of ousting a court of subject matter jurisdiction. 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3738, at 395–96 (3rd ed.1998); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Brown v. Eastern States Corp.*, 181 F.2d 26, 28–29 (4th Cir.1950); *Griffin v. Holmes*, 843 F.Supp. 81, 87 (E.D.N.C.1993); *Hood v. Security Bank of Huntington*, 562 F.Supp. 749, 750–51 (S.D.Ohio 1983); *Thorp v. Petrola*, 81 F.R.D. 513, 515–16 (N.D.W.Va.1979). In this case, the Court finds that the purpose of some of Plaintiff's proposed amendments is to defeat federal jurisdiction, while the purpose of other amendments is merely to clarify Plaintiff's claims. As the Complaint presents a mixed bag of federal and state law claims, the Court must look at each proposed amendment in order to determine whether the original claims set forth federal questions and, if so, whether the proposed amendments would divest federal jurisdiction.

 In its motion, Defendant argues this Court has jurisdiction over Plaintiff's Complaint pursuant to § 301 of the LMRA. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The underlying purpose of preemption under § 301 is to create a uniform body of law to resolve disputes in interpreting collective bargaining agreements. *McCormick v. AT & T Techns., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991). As the Fourth Circuit stated in *McCormick*, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" 934 F.2d at 534 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)) (additional quotation marks omitted). The test to determine whether a state law cause of action is pre-empted by § 301 is "not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement." *Id.* at 535; *see also Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding that "state law is preempted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement").

In deciding whether § 301 preempts Plaintiff's claims, the Court first looks at Counts II, IV, and VIII of the original Complaint because they specifically refer to the collective bargaining agreement. In her Reply brief, Plaintiff concedes that her claim alleging breach of contract in Count II could be sufficient to confer federal jurisdiction. However, she now argues that Count II is "inappropriate" and should be withdrawn because her real claim is that Mr. Lewis' firing for absenteeism was mere pretext for a discriminatory motive.

In Count II, Plaintiff specifically alleges Defendant breached the terms of the collective bargaining agreement, which are alleged to be vague in the factual portion of the Complaint. Assuming Plaintiff intended to state only a claim for pretext, she clearly did not do so in Count II and, indeed, directly made a claim against De-

fendant alleging a violation of the collective bargaining agreement. Despite the fact Plaintiff does not specifically reference § 301 of the LMRA, this claim obviously falls within the preemptive force of that section and resolution of this allegation will certainly require an interpretation of the agreement. Accordingly, the Court finds the claim preempted and, thus, federal jurisdiction exists by virtue of this claim. Nevertheless, as will be discussed supra, the Court finds federal jurisdiction exists independent of the Count II, and, therefore, the Court **GRANTS** Plaintiff's motion to amend her Complaint to voluntarily withdraw this claim.

Likewise, the Court finds Plaintiff's original Count IV for "Fraud" is preempted by § 301. In that claim, Plaintiff alleges Defendant "misrepresented pertinent facts and provisions of the collective bargaining agreement with Mr. Lewis or misapplied those facts in terminating Mr. Lewis's employment with the intent to deceive Mr. Lewis as to his rights and Defendant's obligation regarding the collective bargaining agreement." *Complaint* ¶ 51. Given the nature of this claim, the trier of fact, a fortiori, must analyze the terms of the agreement in order to ascertain what rights and obligations were created therein and whether the terms were misrepresented to Mr. Lewis. Again, the Court finds this allegation squarely falls within the parameters of § 301, and establishes federal jurisdiction. Nonetheless, as the Court stated with regard to Count II, the Court finds jurisdiction exists independent of this count and, therefore, **GRANTS** Plaintiff's motion to voluntarily withdraw Count IV from the proposed Amended Complaint.

■ As in Counts II and IV, Plaintiff directly refers to the collective bargaining agreement in Count VIII of the original Complaint. In Count VIII, Plaintiff alleg-

es that Defendant violated a "Breach of Duty of Good Faith and Fair Dealing" with Mr. Lewis. Unlike Counts II and IV, however, Plaintiff does not seek to withdraw Count VIII entirely from her Complaint. Instead, she reasserts her good faith and fair dealing claim but omits the language in which she claims that Defendant violated its duty of good faith and fair dealing *by failing to abide by the collective bargaining agreement.* Compare Complaint ¶¶ 71–72 *with the proposed Amended Complaint* ¶¶ 56–57. In reviewing this claim, the Court finds for the following reasons that it is preempted by § 301 irrespective of Plaintiff's proposed amendment.

In *Davis v. Bell Atlantic–West Virginia, Inc.,* 110 F.3d 245, 247 (4th Cir.1997), the Fourth Circuit addressed whether a claim of good faith and fair dealing under West Virginia law is preempted by § 301. In *Davis,* the plaintiff was discharged from her employment because of excessive absenteeism and tardiness. 110 F.3d at 246. At the time she was terminated, the plaintiff's employment was covered by a collective bargaining agreement. *Id.* The plaintiff filed a grievance pursuant to the agreement and a settlement was reached. The settlement included, inter alia, a provision reinstating the plaintiff and a provision stating the employer could terminate her again if she was absent or tardy more than a set number of days within the next twelve months. *Id.* In such case, the plaintiff also agreed to waive any rights she would have to file a grievance or request arbitration under the collective bargaining agreement. Within ten months, the plaintiff exceeded the number of days and was terminated. *Id.* In response, the plaintiff filed suit in state court and alleged, in part, wrongful discharge because her employer violated its "implied duties of 'good faith' and 'fair dealing' and a duty

to discharge her only for 'just cause.' " *Id.* The employer removed the case to federal court, arguing it was preempted under § 301. *Id.* The district court denied the plaintiff's motion to remand, so the plaintiff appealed.

Upon review, the Fourth Circuit found "[u]nder West Virginia law, a discharged employee claiming the tort of wrongful discharge for breach of an employment contract must prove, among other things, the existence of the employment contract and the breach of its terms." *Id.* at 249 (citations omitted). As implied duties of "good faith," "fair dealing," and "just cause for termination" are contractual obligations, a claim for wrongful discharge for violations of those implied duties is preempted when the contractual relationship is governed by a collective bargaining agreement. *Id.* (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 216–19, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (" 'Because the [state tort claim] not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation.' ")); *see also Miller v. Massachusetts Mut. Life Ins. Co.*, 193 W.Va. 240, 244, 455 S.E.2d 799, 803 (1995) (stating West Virginia law "do[es] not recognize the implied covenant of good faith and fair dealing in the context of an at-will employment contract"); *see generally Hill v. Ralphs Grocery Co.*, 896 F.Supp. 1492, 1498 (C.D.Cal.1995) (applying California law and holding "State law claims for Breach of the Implied Covenant of Good Faith and Fair Dealing are always pre-empted because the right asserted is rooted in the labor contract and can only be determined by interpreting the rights and obligations established in the contract").

In the present case, there is no doubt that the employment relationship is governed by the collective bargaining agreement. Thus, as this Court must consult the agreement to determine what, if any, implied duties of good faith and fair dealing were created therein, the claim is necessarily preempted by § 301. Accordingly, the Court finds Plaintiff's claim is preempted regardless of whether she removes the language in which she alleges that Defendant violated its duties by failing to abide by the collective bargaining agreement. The fact that Plaintiff included this language in her original claim merely gives this Court an additional reason why the claim is preempted because it would be impossible to determine whether Defendant failed to abide by the terms of the agreement without consulting the agreement to determine its terms.[3] Therefore, the Court **DENIES** Defendant's motion to amend Count VIII of the original Complaint.

With regard to the other five counts in the Complaint, Defendant argues they too, save perhaps one,[4] are preempted under § 301 despite the fact they do not overtly reference the collective bargaining agreement. In Counts I and III of the original Complaint,[5] Plaintiff states claims for "Wrongful Discharge from Employment" and "Wrongful Death." In her proposed Amended Complaint, Plaintiff specifically asserts that the basis of these claims is that Mr. Lewis was wrongfully fired due to

---

**3.** Moreover, this Court will not allow "artful pleading to circumvent the power of § 301's preemptive force." *Davis*, 110 F.3d at 247.

**4.** Defendant states it is not clear whether Plaintiff's claim for wrongful discharge is preempted.

**5.** Count III is renumbered as Count II in the proposed Amended Complaint.

his age and disability, with the wrongful discharge being in violation of the West Virginia Human Rights Act, West Virginia Code § 5–11–1 *et seq.* In analyzing whether either the original or amended claims are preempted under § 301, the Court finds persuasive the Fourth Circuit's decision in *Owen v. Carpenters' District Council,* 161 F.3d 767 (4th Cir.1998).

In *Owen,* the Fourth Circuit was asked to consider whether a claim for wrongful discharge based on a violation of Maryland public policy was preempted by § 301. In *Owen,* the plaintiff filed suit in state court and alleged that she was fired because she had rebuffed her supervisor's sexual advances and complained about sexual harassment. 161 F.3d at 770. The defendant removed the case to federal court, asserting the claim would require an interpretation of the just cause provision contained within the collective bargaining agreement and, therefore, it was preempted under § 301. *Id.*

In analyzing whether removal was proper under the preemption doctrine, the Fourth Circuit quoted *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), in which the Supreme Court held that § 301 does not preempt " 'nonnegotiable rights conferred on individual employees as a matter of state law.' " *Id.* at 773 (quoting *Livadas,* 512 U.S. at 123, 114 S.Ct. 2068). The Fourth Circuit explained that the reason nonnegotiable rights under state law are not preempted is because § 301 is designed to preempt only those actions requiring an interpretation of the collective bargaining agreement. Section 301 "says nothing about the substantive rights a State may

provide to workers when adjudication of those rights does not depend upon interpretation of such agreements." *Id.* (citation omitted). Thus, the Fourth Circuit stated "whether a state cause of action may proceed in state court depends upon 'the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued).' " *Id.*

In applying these criteria to the facts at hand, the Fourth Circuit turned to the elements of wrongful discharge under Maryland law.[6] The Fourth Circuit found that, in order for the plaintiff to prove her wrongful discharge claim under Maryland law, she would have to demonstrate she was discharged because she rebuffed her supervisor's sexual advances or because she complained of sexual harassment. *Id.* at 775. Although the defendant may · argue the plaintiff's discharge was in compliance with the just cause provision of the collective bargaining agreement, the Fourth Circuit held the claim itself presents purely factual questions about the plaintiff's conduct and the motivation and conduct of her supervisor in discharging her. *Id.* To decide these factual questions, a trier of fact will not have to interpret the collective bargaining agreement, even though the defendant may raise the agreement as a defense. *Id.* Therefore, the Fourth Circuit found § 301 preemption does not apply.

■ · In the present case, Plaintiff alleges in her original Count I for wrongful discharge, that Mr. Lewis was improperly fired because of an "illness" and his firing was "unlawful." *Complaint* ¶ 37.[7] In her

---

6. The Fourth Circuit made a preliminary determination that the plaintiff's allegations are actionable under Maryland law as a violation of public policy. *Id.* at 774.

7. In paragraph 37, Plaintiff specifically asserts: "Defendant's act of terminating the employment of Mr. Lewis for an illness exacerbated during the course of his employment was unlawful." *Complaint* ¶ 37.

proposed Amended Complaint, Plaintiff seeks to amend this count to specifically state a claim for disability and age discrimination in violation of the West Virginia Human Rights Act. *Proposed Amended Complaint* ¶¶ 32 and 33.[8] Although Plaintiff did not expressly use the phrase "disability discrimination" in her original claim, the Court finds that by using the words "illness" and "unlawful" Plaintiff was attempting to state a wrongful discharge case on the basis of disability-a fact that she clarifies in her proposed amendment. Accordingly, the Court finds that Plaintiff is not attempting to subvert this Court's jurisdiction by amending Count I; rather, she is merely trying to more specifically state her claim.[9] Therefore, the Court turns to the issue of whether claims for disability and age discrimination under West Virginia law are preempted by § 301.

█ In order to establish wrongful discharge in West Virginia based upon a contravention of public policy, the West Virginia Supreme Court has stated that a plaintiff must show that such a substantial public policy exists and then show the motivation underlying the discharge was in contravention of the policy. Syl. Pt. 8, *Page v. Columbia Natural Res., Inc.,* 198 W.Va. 378, 480 S.E.2d 817 (1996). If a plaintiff meets this burden, "liability will then be imposed on a defendant unless the defendant proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive." *Id.* In the case at hand, it is clear that both disability and age discrimination in employment violate substantial public policies in West Virginia.[10] Thus, Plaintiff is left to show whether those factors were the motivating force behind her discharge.

█ Like in *Owen,* the Court finds that this determination presents purely factual questions about the underlying motivation and conduct of Defendant in discharging Mr. Lewis from his employment. This straightforward inquiry into the underlying motivation and conduct of Defendant does not require a trier of fact to interpret the collective bargaining agreement. Indeed, even if Defendant argues that it properly discharged Mr. Lewis under the terms of the agreement, the fact that the collective bargaining agreement may be referred to or consulted during the decision making process does not warrant a finding in favor of § 301 preemption. Therefore, the Court finds that § 301 preemption does not apply to Plaintiff's allegation that Mr. Lewis' discharge was based on disability and age discrimination. Therefore, the Court GRANTS Plaintiff's

---

8. Paragraphs 32 and 33 provide:
 32. Defendant terminated the employment of Mr. Lewis due to his age and disability. Any other reason given by Defendant for the termination is a pretext.
 33. This count and cause of action is brought pursuant to the West Virginia Human Rights Act, W. Va.Code § 5–11–1 et seq., and other applicable law of the state of West Virginia.
 *Proposed Amended Complaint* ¶¶ 32–33.

9. Although in her original Count I Plaintiff has a general paragraph incorporating by reference the factual allegations of the Complaint, which include allegations that Defendant did not follow the provisions of the collective bargaining agreement regarding absenteeism, this clearly is not the focus of Count I. Therefore, the Court finds the incorporation of this language in the original Count I does not warrant preemption of the claim.

10. *See W. Va.Code,* 5–11–2 (providing "[i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment ... [and it] is hereby declared to be a human right or civil right of all persons without regard to ... age ... or disability").

motion to amend Count I to specifically state these claims.

Defendant argues, however, Plaintiff's amended wrongful discharge claim may be otherwise preempted because she not only bases her action on the West Virginia Human Rights Act, but also on "other applicable law of the state of West Virginia." *Proposed Amended Complaint* ¶ 34. Defendant asserts the only "other" law Plaintiff could be referring to is contract law which relates to the collective bargaining agreement. At this point, the Court will not speculate about what "other" law Plaintiff believes applies. However, to resolve Defendant's concern, the Court **DIRECTS** Plaintiff, within ten days of entry of this Order, to either withdraw the reference or file a more definite statement about what "other" law she believes applies. If Defendant believes the "other" law specified by Plaintiff is preempted, the Court will entertain a renewed motion by Defendant for preemption of this count.

■ As with her wrongful discharge claim, the Court finds Plaintiff should be permitted to amend her claim for wrongful death in Count III of the original Complaint (identified as Count II in the proposed Amended Complaint) because the original claim is not one that would be preempted by § 301. In the original Complaint, Plaintiff alleges that Mr. Lewis was "willfully, wantonly, negligently and carelessly terminated" so that Defendant could "avoid paying for his medical care, ... avoid the costs associated with his work-

ers' compensation claim, and ... avoid other costs of having Mr. Lewis as an employee." *Complaint* ¶¶ 46 and 47. As a result of being wrongfully terminated, Plaintiff asserts that Mr. Lewis was unable to pay for his prescription drugs and medical treatment, which proximately caused his death. *Complaint* ¶¶ 47–48.

■ In order to prove wrongful death in West Virginia, "a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect or default." *Bradshaw v. Soulsby*, 210 W.Va. 682, 688, 558 S.E.2d 681, 687 (2001). With respect to the second prong of this test, Plaintiff asserts Mr. Lewis's death was the result of his wrongful termination. Although, as in her original wrongful discharge claim, Plaintiff does not specifically use the word "disability" as the motivation behind the termination, the clear implication is that Mr. Lewis was fired because Defendant wanted to avoid the costs associated with his medical condition. In other words, Defendant wanted to avoid the costs of Mr. Lewis' disability (whether related to Mr. Lewis' health care or the fact he filed for worker's compensation). Therefore, the Court finds Plaintiff is not attempting to oust the Court of jurisdiction by clarifying her claim, and her motion to amend her wrongful death claim is **GRANTED.**[11] In addition, for the reasons stated with regard to the wrongful discharge claim, the Court finds Plaintiff's claim that Mr. Lewis was "willfully, wan-

---

**11.** With respect to the workers' compensation claim, the West Virginia Supreme Court stated in Syllabus Point 2 of *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980), that "[i]t is a contravention of public policy and actionable to discharge an employee because he has filed a workmen's compensation claim against his employer." *See also* W. Va.Code, 23–5A–3 (codifying West Virginia's common law). As such, the claim

would not preempted by § 301. *See Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding retaliatory discharge claim under Illinois law for employee filing worker's compensation claim is not preempted by § 301). Interestingly, despite the fact this claim would not have been preempted, Plaintiff drops this allegation from her amended wrongful death count.

tonly, negligently and carelessly terminated" because of his disability and age raises purely factual questions which do not require interpretation of the collective bargaining agreement. Likewise, the issue of whether Mr. Lewis' death resulted from the termination raises only a factual issue. Accordingly, the Court finds that the amended claim is not preempted by § 301.

 In Count III of the proposed Complaint, Plaintiff reiterates her claim for "Constructive Fraud," as alleged in Count V of the original Complaint.[12] Specifically, Plaintiff asserts that "Defendant's illegal and fraudulent acts, as alleged herein, which include the breach of both legal and equitable duties owed to Mr. Lewis, tended to deceive Mr. Lewis and violate private confidence between Defendant and Mr. Lewis." *Proposed Amended Complaint* ¶ 42. The only difference between the original and proposed amendment is that the original claim incorporates the factual allegations which mention the collective bargaining agreement, while the proposed Amended Complaint omits those references from the factual section. The problem with both of these counts, howev-

er, is that neither clearly sets forth what legal or equitable duties were specifically violated. Being devoid of specificity makes it impossible for this Court to determine whether resolution of the claim is dependent upon, or intrinsically intertwined with, the terms of the collective bargaining agreement.[13] Therefore, the Court finds if Plaintiff seeks to proceed on this claim she must file a more definite statement pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.[14] The Court **DIRECTS** Plaintiff to file her statement within ten days of entry of this Order.

 Finally, Plaintiff seeks to amend Counts VI and VII of her original Complaint for "Outrageous and Unconscionable Conduct" and "Intentional Infliction of Emotional Distress." The Court considers these two counts together because they are used interchangeably under West Virginia law. *See Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 374, 504 S.E.2d 419, 424 (1998) (stating intentional or reckless infliction of emotional distress is also called the tort of outrage).[15] In both counts, the

---

12. In order to establish constructive fraud in West Virginia, a plaintiff must show " '[i] that there was a material false representation, [ii] that the hearer believed it to be true, [iii] that it was meant to be acted on, [iv] that it was acted on, and [v] that damage was sustained.' " *Gum v. Dudley*, 202 W.Va. 477, 488, 505 S.E.2d 391, 402 (1997) (quoting *Spence–Parker v. Maryland Ins. Group*, 937 F.Supp. 551, 561 (E.D.Va.1996) (other citation and quotation marks omitted)).

13. Depending upon the specific allegations of fraud, courts have reached different results in deciding whether those claims are preempted. *See Wynn v. AC Rochester*, 273 F.3d 153 (2nd Cir.2001) (finding no preemption of state law fraud claim); *In re Glass, Molders, Pottery, Plastics & Allied Workers International Union*, 983 F.2d 725 (6th Cir.1993) (determining state law fraud claim is preempted).

14. Rule 9 of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

15. In Syllabus Point 3 of *Travis*, the West Virginia Supreme Court held:

In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional

proposed amendments are substantially identical to the original counts except that the factual allegations in the proposed Amended Complaint, as incorporated in each count, omit all references to the collective bargaining agreement. Neither the original counts nor the proposed amended counts make any direct claims under the collective bargaining agreement. Regardless, Defendant argues they are preempted because resolution of these claims requires an analysis of the collective bargaining agreement.

In arguing these claims are preempted by § 301, Defendant cites *McCormick, supra,* and *Foy v. Giant Food Inc.,* 298 F.3d 284 (4th Cir.2002). In *McCormick,* the plaintiff filed suit against his former employer for intentional infliction of emotional distress, inter alia, because of the manner in which his employer disposed of the contents of his work locker after he was discharged. 934 F.2d at 533. At the time of his employment, the plaintiff was covered by a collective bargaining agreement which governed the terms and conditions of his employment. *Id.* In determining whether § 301 preempted the claim, the Fourth Circuit found that the employer's conduct in cleaning the plaintiff's locker was "not a matter of intrinsic moral import but a question of legal authority-whether management had the lawful right to proceed as it did." *Id.* at 536. In other words, the Fourth Circuit stated that one must look to the arrangements embodied in the collective bargaining agreement "to determine whether a 'duty of care' exists or to define 'the nature and scope of that

duty, that is, whether, and to what extent, the [employer's] duty extended to the particular responsibilities alleged by [the employee] in h[is] complaint.'" *Id.* (quoting *IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). If, upon review of the collective bargaining agreement, it is determined that the employer owed the plaintiff no duty and did not wrongfully dispose of the contents of the locker under the agreement, there can be no violation of state law. *Id.* at 537. Applying these principles to the plaintiff's claim for intentional infliction of emotional distress, the Fourth Circuit stated that under Virginia law, an "'actor is never liable ... where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'" *Id.* (quoting Restatement (Second) Torts (1965)). Thus, because the act of cleaning out the plaintiff's locker, resulting in the claim for intentional infliction of emotional distress, is "substantially dependent on an analysis of the terms of the collective bargaining agreement[,]" the Fourth Circuit found the claim preempted under § 301. *Id.*

The Fourth Circuit reached a similar result under Maryland law in *Foy.* In that case, the plaintiff filed suit against his employer after he was fired for fighting with a co-worker. 298 F.3d at 286. In his suit, the plaintiff alleged his employer's actions toward him were extreme and outrageous because he was acting in self defense during the fight. *Id.* at 287. In considering whether the plaintiff's result-

distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis; see also* Syl. Pt. 6, *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982) (stating "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm").

ing claim for intentional infliction of emotional distress was preempted under § 301, the Fourth Circuit relied upon the analysis set forth in *McCormick* and found the circumstances presented were governed by the provisions of the collective bargaining agreement, which authorized the employer to terminate employees for cause and to manage and control the work force. *Id.* at 288. Thus, the Fourth Circuit held the claim was preempted by § 301 because "proof of extreme and outrageous conduct ... requires evaluating whether ... [the employer's] actions are authorized by the collective bargaining agreement." *Id.* at 288, n. 3.

In the present case, the Court agrees with Defendant that Plaintiff's claims for outrage and intentional infliction of emotional distress would be preempted under *McCormick* and *Foy* to the extent they allege that Defendant committed these acts by failing to abide by the terms of the collective bargaining agreement. However, the Court finds Plaintiff did not base these claims in either her original Complaint or her proposed Amended Complaint on this ground. Instead, Plaintiff specifically asserts in her claim for outrage that Defendant's actions violated West Virginia public policy, presumably the West Virginia Human Rights Act as clarified in Count I of the Amended Complaint. *See Complaint* ¶ 62 and the *proposed Amended Complaint* ¶ 47 (stating "Defendant's intentional, willful, wanton, reckless, unlawful, fraudulent and malicious actions, as alleged herein, constitute the tort of 'Outrage' and unconscionable conduct pursuant to West Virginia law, and violates the public policy of the state of West Virginia"). Likewise, although Plaintiff does not identify the precise conduct Defendant committed resulting in her intentional infliction of emotional distress claim, a fair reading of both Complaints indicates it is based, at

least in part, upon Plaintiff's allegations of discrimination. *See Complaint* ¶ 66 and the *proposed Amended Complaint* ¶ 51 (stating "Defendant's intentional, willful, wanton, reckless, unlawful, fraudulent and malicious actions, as alleged herein, caused Mr. Lewis, and continue to cause Mr. Lewis's lawful heirs and dependents, to be subjected to severe emotional distress").

The Court finds that claims based upon age and disability discrimination in violation of the West Virginia Human Rights Act are substantively different than the claims made in *McCormick* and *Foy* because discrimination claims are wrong under state law regardless of the terms collective bargaining agreement. As the Fourth Circuit explained in *Jackson v. Kimel,* 992 F.2d 1318 (4th Cir.1993), a claim for intentional infliction of emotional distress based upon sexual harassment is not preempted by § 301 "not because of a duty of care created or defined by the terms of the collective bargaining agreement, but because of the principles of state tort law. To hold otherwise would mean every tort relating to the work place would be preempted-a result *McCormick* neither supports or requires." 992 F.2d at 1326. Indeed, in applying this principle to the West Virginia Human Rights Act, the district court stated in *Knox v. Wheeling–Pittsburgh Steel, Corp.,* 899 F.Supp. 1529 (N.D.W.Va.1995), that the elements of a discrimination claim relate "to the conduct and motivation of the employer under statutory standards, rather than the standards of the CBA." 899 F.Supp. at 1534. It is irrelevant whether an employer acted consistently with the collective bargaining agreement when the gravamen of the claim is that the employer's discriminatory actions were so atrocious, intolerable, extreme, and outrageous as to exceed the bounds of decency under state law. *Id.* at

1535.[16] Therefore, in the present case, the Court finds that Plaintiffs claims for outrage and intentional infliction of emotional distress are not preempted by § 301, with Plaintiff being restricted to using discrimination as the basis for those claims. Accordingly, the Court **GRANTS** Plaintiff's motion to amend those counts.

## III.

## CONCLUSION

Accordingly, for the foregoing reasons the Court makes the following rulings with regard to each Count:

1. Plaintiff's motion to amend Count I is **GRANTED**, but the Court **DIRECTS** Plaintiff to either withdraw her reference to "other" law or file a more definite statement about what "other" law she believes applies;

2. Plaintiff's motion to withdraw Count II is **GRANTED**;

3. Plaintiff's motion to amend Count III is **GRANTED**;

4. Plaintiff's motion to withdraw Count IV is **GRANTED**;

5. With regard to Plaintiff's motion to amend Count V, the Court **DIRECTS** Plaintiff to file a more definite statement within ten days of entry of this Order. In the meantime, Plaintiff's motion to amend this count is **HELD IN ABEYANCE**;

6. Plaintiff's motion to amend Count VI is **GRANTED**;

7. Plaintiff's motion to amend Count VII is **GRANTED**; and

8. Plaintiff's motion to amend Count VIII is **DENIED** because said claim is preempted by § 301.

Furthermore, as the references to the collective bargaining agreement in the factual portion of the Complaint are no longer necessary to resolve the remaining amended claims, the Court **GRANTS** Plaintiff to amend that section. The Court **DIRECTS** Plaintiff to file her Amended Complaint in conformity with this Order within ten days.

Having determined that Counts II, IV, and VIII of the original Complaint are all preempted under § 301, the Court **FINDS** removal of this case was proper. Accordingly, the Court **DENIES** Plaintiff's motion to remand this case back to state court as federal question jurisdiction exists, and the Court will exercise its supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367.

Given these amendments and the analysis of each claim above, the Court further **DENIES without prejudice** Defendant's motion for summary judgment. If Defendant so chooses, it may refile its motion in light of these changes and today's ruling.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties and to publish it on the Court's website.

**16.** *See also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (stating § 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of the labor contract"); *St. John v. International Assoc. of Machinists and Aerospace Workers, Local # 1010,* 139 F.3d 1214, 1219 (8th Cir. 1998) (holding "[a] claim of intentional infliction of emotional distress in the workplace will avoid preemption if the employer's outrageous conduct violates its duty to every member of society, not just to employees covered by the collective bargaining agreement").